New Haven & Northampton Co. *v.* The State of Connecticut.

———◆◆◆———

## THE NEW HAVEN & NORTHAMPTON COMPANY *vs.* THE STATE OF CONNECTICUT.

Under the rules of the English common law the granting of a peremptory mandamus was a mere award of the court and not a formal judgment; and no writ of error lay from such an award.

Under those rules the prosecutor could not demur to the return, and thus raise a question of law as to its sufficiency.

But under our statute (Gen. Statutes, tit. 19, ch. 17, sec. 2,) the relator is allowed to demur to a return, and the awarding of the mandamus becomes a formal judgment from which a writ of error will lie.

Where a case has been reserved by a lower court for the advice of this court, and the advice has been given and judgment rendered in accordance with it, the court will not afterwards consider, upon proceedings in error, questions on which the plaintiff in error has been heard, or might have been heard, when the case was before the court upon the reservation.

But where a statute upon which the right of action depends is drawn in question as being repugnant to the constitution of the United States, this court will entertain a writ of error, notwithstanding a previous reservation, for the purpose of affirming the judgment, that the case may be carried to the Supreme Court of the United States.

WRIT OF ERROR to this court from a judgment of the Superior Court in issuing a peremptory mandamus.

The proceeding upon which the mandamus was issued is fully stated in the report of the case of *The State of Connecticut* v. *The New Haven & Northampton Company*, 43 Conn. R., 351. The case had been reserved by the Superior Court for the advice of this court, upon a demurrer to the return of the respondents, and this court had advised the Superior Court that the return was insufficient. The Superior Court thereupon rendered the following judgment in the case:

"It is ordered and adjudged that the return of the respondent is insufficient, and that a peremptory writ of mandamus do now issue, directed to the respondent named in said alternative writ, commanding it forthwith on service thereof to stop at said depot mentioned in said alternative writ, hereafter, its regular passenger and freight trains passing over said road of the respondent, for the purpose of receiving and discharging passengers and freight."

From this judgment the present writ of error was brought, the assignment of error being "that the court, in proceeding to and rendering said final judgment, manifestly erred and mistook the law in this, to wit, in holding that the said special plea or answer so filed in said cause was not sufficient in the law to answer the premises charged upon the respondent in said writ, and in sustaining the demurrer thereto, and rendering judgment thereon, as aforesaid."

In this court the Attorney for the State moved that the case be stricken from the docket, on the ground that a writ of error will not lie from a judgment in mandamus.

*W. Hamersley*, State's Attorney, and *J. R. Buck*, in support of the motion to strike the case from the docket.

1. The order of the Superior Court granting the return, and ordering a peremptory mandamus to issue, was final, and the law provides for no writ of error in such cases. Our statutes have never undertaken to define the nature and extent of writs of error. They may be brought from judgments of the Superior Court to the Supreme Court of Errors. Gen. Stats., p. 449, § 10; Revision of 1808, p. 218. What action of the Superior Court constitutes a judgment within the meaning of the statute, is to be determined by the rules of the common law. The question to be determined then, is whether, by the rules of the common law, a writ of error lies from the action of a court of competent jurisdiction overruling a return to an alternative mandamus and ordering the issuing of a peremptory mandamus? The proceeding of mandamus is the creation both of the common and statute law. The statutes relating to this proceeding, in England and in the various

states of the United States, differ materially.   In determining
the nature of the proceeding in any particular state, regard
must be had, first to the common law, next to the statute
modifications.   Therefore decisions of courts, and especially
*obiter dicta*, are to be relied upon as authority only after care-
ful examination of the statutes in force where the decisions
are rendered.   By the common law of England mandamus
is a prerogative writ, issuable at the discretion of the court.
The prerogative character of the writ continued after our
separation from the mother country.   The prerogatives of the
king merely as sovereign, and which were exercised through
the courts, passed from the king to his colonies and became
vested in the governments of the several states.   *United
States* v. *Kendall*, 5 Cranch C. C., 264; *McBride* v. *Grand
Rapids*, 3 Central Law J., 309.   To the alternative writ a
return could be made.   The truth of it could not be ques-
tioned.   If it was a legal answer to the alternative writ, no
peremptory writ issued.   If the return was false, an action at
law for making a false return could be brought, and the truth
of the facts ascertained in that action.   Pending the trial of
the action for false return, the court would delay action upon
the return; upon being certified that a judgment had been
obtained by the plaintiff in the action for false return, the
court then might issue the peremptory writ.   But under no
circumstances could the action of the court in dealing with
the alternative writ of mandamus be reviewed by writ of error.
The main reasons for this rule are found in the peculiar
nature of the proceedings.   1st. Mandamus is a prerogative
writ to compel the performance of a clearly defined and cer-
tain legal duty.   It never determines a right.   2d. The
granting the mandamus lies in the discretion of the court.
It is not every failure to perform an undoubted legal duty that
justifies the granting of the writ.   Questions of discretion
are not reviewable.   The discretion allowed in mandamus is
more limited, more essential to justice, and far less liable to
abuse, than the discretion allowed in cases of injunction, peti-
tions for new trial, &c.   It will be readily seen that the law

did not treat the action of the court in granting or refusing a peremptory writ of mandamus as a judgment liable to review, not simply on account of a verbal technicality, but by reason of the essential nature and object of the proceeding. But in time mandamus grew to be used in cases where questions of fact must arise and rights be determined. To provide for these cases the expedient of an action for false return was devised. This method proving cumbersome, the statute 9 Anne was passed in 1711, modifying the proceeding of mandamus in those cases where questions of right might be involved, and in those cases providing for a trial and judgment. But this statute applied only to cases where the return contained disputed allegations of fact. Where no question of fact arose the proceeding remained precisely as it was before. The allegations of the return being admitted, no question of right would be presented. The only questions would be, do the suggestions of the writ and the allegations of the return disclose the neglect to perform a clear legal duty? and are the circumstances such as to demand the interposition of the discretionary power of the court? It is contrary to all the analogies of the law that such a question should be reviewed on error, and the law clearly forbids it. After the passage of the statute of Anne, the law recognized two distinct proceedings in alternative mandamus; first, under the statute, where a right was determined in the same way as formerly by action for false return; second, where the return raised no question of fact or right. The order of the court in the latter case was an act of discretion only, and furnished no foundation for a writ of error. That such is the common law of England is settled beyond all possibility of doubt. High's Ex. Leg. Rem., § 557; *Rex* v. *Dean & Chapter of Dublin*, 1 Strange, 536; *Dean & Chapter of Dublin* v. *Dowgatt*, 1 P. Wms., 348; *Rex* v. *Lord of Oundle*, 1 Ad. & El., 283, 297, 299. The English law prevails in states where there is no special legislation. High's Ex. Leg. Rem., § 557; *People* v. *President, &c. of Brooklyn*, 13 Wend., 130; *People* v. *Steele*, Edmond's Sel. Cas., 505; *Layton* v. *State*, 4 Dutch., 575. In Massachusetts the statute of Anne was not adopted,

and the proceeding remained as at common law before that statute. *Howard* v. *Gage*, 6 Mass., 462; *Strong, Petitioner*, 20 Pick., 497. And was not changed until the practice acts of 1851 were passed. *Lunt* v. *Davison*, 104 Mass., 501. A similar view of the law is held in Canada. *Regina* v. *Wells*, 17 U. Can. Queen's B., 545. In Connecticut no statute on the subject of mandamus was passed until 1821. The rules of the English common law as modified by the statute of Anne, were recognized as the common law of the state. *Strong's Case*, Kirby, 345; *Meacham* v. *Austin*, 5 Day, 233. The statute of 1821, unless necessary to confirm the jurisdiction of the Superior Court after the adoption of the constitution, was declaratory of the common law. No statute affecting the question at issue has been passed since 1821. The law of the state at that time was the same as the common law of England. This claim is susceptible of demonstration. If the law has been altered since 1821, it must have been done by judicial legislation. But no case can be cited to prove any such legislation.

2. It appears from the record that the Superior Court declined to entertain the first motion of the counsel for the state, and compelled the filing a motion more analogous in form to a demurrer. This action of the court can not affect the legal effect of its order. It is a mere question of practice. Whether we test the legal sufficiency of the return by a motion technically in the form of a motion for a concilium or technically in the form of a demurrer, is immaterial except as it relates to accuracy in practice. And so the court intimated in the two cases cited above, *Rex* v. *Lord of Oundle* and *Regina* v. *Wells*.

3. Where the Superior Court reserves a case for the advice of the Supreme Court of Errors, upon questions of law involving the whole case, and the advice is given, leaving no room for any action on the part of the Superior Court, except to enter up judgment in accordance with the advice of the Supreme Court, the judgment so rendered is not a judgment within the meaning of the statute allowing writs of error. It is practically and for the purposes of the law a judgment of

the Supreme Court of Errors. The allowance of the writ of error was therefore void, and the case should be stricken from the docket.

*G. H. Watrous* and *C. E. Perkins,* contra.

When this case was before this court on a reservation it advised that judgment should be rendered for the plaintiff, and the Superior Court, in accordance with that advice, rendered judgment in favor of the plaintiff. As it was a reservation no further proceedings from the decision of this court would lie, and as some of the questions therein arise under the constitution of the United States, and are of great importance, the counsel for the defendants filed this writ of error in order to take these questions to the Supreme Court of the United States. The plaintiff now excepts to the jurisdiction of this court, on the ground that in proceedings in mandamus no writ of error will lie; and this is the sole question for the consideration of the court.

A writ of error is a writ of right, and there is no discretion in relation to it. *Crosby's case,* 3 Wils., 188, 193; *Queen* v. *Paty,* 2 Salk., 503. The general principle will probably also be admitted that at common law writs of error lie from all judgments of courts. Lord Coke says: "This writ lieth when a man is grieved by any error in the foundation, proceedings, judgment, or execution, and thereupon it is called *breve de errore corrigendo.* But without a judgment, or an award in the nature of a judgment, no writ of error doth lie." Coke upon Littleton, 288 b., § 503. And it has been held in innumerable cases in England and this country, that at common law, whenever there is a *judgment* of a court of common law, a writ of error will lie. In this state, however, the issuing of writs of error is provided for by statute, as follows: "Writs of error may be brought to the Supreme Court of Errors, to be holden in any judicial district or county, from the *judgments and decrees* of the Superior Court, Common Pleas and District Court in such judicial district or county." The only question, therefore, in this part of the case is, was there a *judgment* in this action? It would seem that this question was settled by

the papers themselves. The record says: "The court rendered the following *judgment.*" "It is ordered and *adjudged* that the return of the respondents is insufficient, &c." In the reservation the question reserved was, what *judgment* shall be rendered upon the record, and this court advised that judgment be rendered for the plaintiff. The construction of this statute has always been that error would lie in mandamus. By Gen. Stat., p. 455, sec. 14, it is enacted, that "when a final judgment is rendered or decree passed in any cause in which a party *may be entitled to a writ of error* to the Supreme Court of Errors, he may, in the same term, and within twenty-four hours, file his motion in error." In all cases, therefore, where a motion in error will lie, it must be that a writ of error also will lie, for it is only *because* a writ of error lies that a motion will lie, and if this court has sustained motions in error in any case, it is the same exactly as if writs of error had been brought and sustained in that case. But since 1858 eleven cases of mandamus have been brought before this court by motion in error, and passed upon by this court without any intimation either by court or counsel that there could be any question as to the power of the court to entertain them. *Waterbury* v. *Hartford, Prov. & Fishkill R. R. Co.*, 27 Conn., 146; *Colt* v. *Roberts*, 28 id., 330; *State* v. *Hartford & N. Haven R. R. Co.*, 29 id., 546; *Freeman* v. *Selectmen of New Haven*, 34 id., 406; *Pratt* v. *Meriden Cutlery Co.*, 35 id., 36; *Seymour* v. *Ely*, 37 id., 103; *State* v. *N. Haven & Northampton Co.*, 37 id., 153; *State* v. *N. Haven & Northampton Co.*, 41 id., 134; *Lyon* v. *Rice*, 41 id., 245; *Farrell* v. *King*, id., 448; *State* v. *Hillard*, 42 id., 168. See also *Stonington* v. *States*, 31 Conn., 214. If anything was required to show the meaning of this statute it would seem that this must be sufficient. But the rule is the same elsewhere. High on Extr. Rem., § 557, says: "In this country the courts, *almost without exception*, regard the judgment of an inferior court awarding or refusing a peremptory mandamus as a final judgment on which error will lie." The statutes of the United States, on the subject of writs of error, are similar to our own. "All *final judgments* of any Circuit

Court in civil actions may be re-examined and reversed or affirmed in the Supreme Court upon a writ of error." U. S. Statutes, § 691. The U. S. Courts have always held that under this statute writs of error would lie in cases of mandamus. *U. States* v. *Columbian Ins. Co.*, 2 Cranch C. C., 266; *Columbian Ins. Co.* v. *Wheelwright*, 7 Wheat., 534; *U. States* v. *Kendall*, 5 Cranch C. C., 278; *Kendall* v. *U. States*, 12 Pet., 618; *Holmes* v. *Dennison*, 14 Pet., 566; *Ex parte De Groot*, 6 Wall., 497. And there are many other cases in the Supreme Court to the same effect. See also, 1 Redf. on Railways, 695; Moses on Mandamus, 232. And we believe that in all of the states where the remedy is by writ of error, it lies in cases of mandamus, except in New Jersey, and at one time in New York, when the courts of the latter state followed the English practice, and rendered no judgment in the proceeding, and for that reason held that no writ of error could lie. In those states where the remedy is by appeal, of course the matter is regulated by codes or statutes, but we believe that in almost all of them there is some method of reviewing the decision of the lower court in mandamus. What possible reason can be urged why decisions in mandamus should not be reviewed? They are considered now mere actions at law, like any others. *Gilman* v. *Bassett*, 33 Conn., 298; *State* v. *N. Haven & Northampton Co.*, 41 id., 137; *Kentucky* v. *Dennison*, 24 How., 97; High on Ext. Rem., § 4; 2 Dillon Municp. Corp., § 663. Questions arise in them of great importance and great difficulty, and it is certainly right and reasonable that they should be finally settled by this court. It is true that in England at one time it was held that writs of error would not lie in proceedings in mandamus, but this was solely on account of the peculiar form which was pursued in such actions at that time. There was literally nothing in the proceedings but the petition and answer; if that on its face set out a good defence no plea was allowed, nor any evidence as to matters of fact was taken, the petition was dismissed, and the real question was tried by an action for a false return, upon which a writ of error would lie. No demurrer ever was allowed, but they devised what was called

a *concilium*, but no judgment could be rendered on that. By the statute of Anne it was allowed to traverse this return, and upon such traverse a judgment could be rendered, *and then a writ of error would lie*, but it was not allowed even then to file a demurrer, and it was expressly held in the leading case of *Rex* v. *Dean & Chapter of Dublin*, 8 Mod., 27, that if either party *could demur*, and there was a *judgment on a demurrer*, then a writ of error would lie. See High on Ext. Rem., §§ 556, 557, and notes, where this is fully considered and explained. But these old decisions and forms of practice have never been adopted in this state, and here by the express terms of the statute, as well as by the universal practice both of the bar and of this court, writs of error will lie in such cases.

HOVEY, J.* This case comes before us on a writ of error to reverse a judgment of the Superior Court for Hartford County. The proceedings below were by mandamus, to compel the plaintiffs in error, a railroad corporation created by the laws of this state, to perform a duty imposed upon them by an act of the General Assembly. The act referred to, which was passed upon the petition of Orson W. Stow and others, on the 15th of August, 1875, ordered and made it the duty of the plaintiffs in error, upon the performance by the petitioners of certain conditions, to stop their regular trains of cars at Plantsville in the town of Southington for the purpose of receiving and discharging passengers and freight. It also contained a provision that the order and duty so made and imposed might be enforced by mandamus by the State's Attorney for the county of Hartford or at the relation of any inhabitant of the town of Southington. The conditions prescribed were performed by the petitioners for the act, but the plaintiffs in error refused to stop their trains at Plantsville as the act required. The State's Attorney thereupon applied to the Superior Court sitting at Hartford, for a writ of mandamus to compel the plaintiffs in error to perform that duty.

---

* Judge HOVEY of the Superior Court sat in the place of Judge GRANGER, in this and the two following cases.

Upon that application an alternative mandamus was issued, which was duly served. The plaintiffs in error made a return in which they admitted that they had not stopped their trains at Plantsville, and assigned various causes for not doing so, one of which was that the act of the General Assembly was in violation of the constitution of the United States. The attorney for the state, following the common law practice which prevailed in England before the statute of VI and VII Victoria, ch. 67, objected to the return as insufficient, and moved for a concilium, in order that the question of its sufficiency might be set down for argument on a certain day, and determined in a summary manner, without a formal demurrer and without pleadings. The court below, however, declined to entertain the motion, and then the attorney demurred to the return. But there was no entry upon the record of a joinder in demurrer. Overlooking this informality, or deeming it of no importance, as it was not excepted to, the court reserved the question as to the judgment which should be rendered for the advice of this court. And this court, after argument and deliberate consideration, advised the Superior Court that the return to the alternative mandamus was insufficient and that a peremptory mandamus should be granted. In pursuance of that advice the Superior Court adjudged that a peremptory writ should issue directed to the plaintiffs in error, commanding them, immediately upon the service thereof, and thereafter, to stop at Plantsville their regular passenger and freight trains for the purpose of receiving and discharging passengers and freight. The writ was accordingly issued, but before it was served the defendants below brought the present writ of error.

The defendant in error now moves that the writ of error be struck from the docket, which is equivalent to a motion to quash the writ, on several grounds. In the first place he insists that a writ of error does not lie on the award of a peremptory mandamus; and in support of this position he relies mainly upon the case of *The King* v. *The Dean and Chapter of Trinity Chapel in Dublin*, 1 Stra., 543; *S. C.*, 8 Mod., 27. That case was on a writ of error from the King's

Bench in Ireland to the King's Bench in England on the award of a peremptory mandamus, and the question was whether a writ of error would lie on such an award. After two arguments it was determined that it would not lie, and it was accordingly quashed. The court in giving judgment said that it was against the nature of a writ of error to lie on any judgment but in causes where an issue might be joined and tried, or where judgment might be had on demurrer. This judgment was subsequently affirmed in the House of Lords, all of the common law judges being of opinion that a writ of error would not lie. 2 Bro. P. C., 554. The same point afterwards came before the House of Lords in the case of *Pender* v. *Herle*, 3 Bro. P. C., 178, and the like decision was made upon the ground that to grant or deny a mandamus was a mere award of the court and not a strict formal judgment. The doctrine of these decisions was recognized and enforced in the other cases referred to by the defendant in error.

In the case of *The King* v. *The Lord of the Manor of Oundle*, 1 Ad. & El., 283, the question of the sufficiency of the return to an alternative mandamus had been argued upon a motion for a concilium, and after argument a peremptory mandamus had been awarded. Whereupon the counsel for the defendants, with the purpose of having the question carried before a court of error, moved for and obtained a rule to show cause why an order should not be made requiring the prosecutor to demur to the return and the defendants to join in demurrer, and that judgment thereupon be entered on the record that the return be quashed for insufficiency and a peremptory mandamus awarded. It was argued in support of the rule that the effect of the statute of IX Anne, ch. 20, in allowing the prosecutor to plead to or traverse the return and the defendant to reply, take issue or demur, was to enable a party dissatisfied with the judgment in a mandamus proceeding to have it reviewed upon a writ of error; that although it was not expressly mentioned in the statute that the prosecutor might demur to the return, yet it was provided that he might plead to or traverse the facts contained in it, and therefore he might plead that they did not amount

to a sufficient return in law, and a substantial demurrer would be an issuable plea. But the court discharged the rule; Patterson, J., saying that "the original practice was that the party objecting to a return made an application to the court to quash it, which was in the nature of a demurrer; if the application was sustained, a peremptory mandamus went, and there could be no proceeding in error." And he further stated that the statute of Anne "did not remove any difficulty in that respect." Littledale, J., said that "the concilium is the usual mode of demurring in such cases."

The case of *The People v. The President and Trustees of Brooklyn*, 13 Wend., 130, arose in the state of New York and was decided by the Court for the Correction of Errors in that state. The relators obtained an alternative mandamus from the Supreme Court against the defendants, requiring them to cause a report which had been made by certain commissioners of estimate and assessment in reference to the opening of a street, to be filed in the office of the clerk of King's County or to show cause to the contrary. On the coming in of the return the relators, instead of pleading thereto or putting in a demurrer, as under the New York statutes they might, applied by motion for a peremptory mandamus, which the court denied. The relators thereupon sued out a writ of error, and brought the record before the Court of Errors for revision; but the court dismissed the writ. The chancellor, in giving the reasons of the court for thus disposing of the case, said that he had not considered it necessary to examine the case upon its merits, having arrived at the conclusion that no writ of error lay upon the granting or refusing a mandamus upon a mere motion, where no plea or demurrer to the return had been filed.

In all of the cases referred to, except the last, the proceedings were regulated and controlled by the rules of the English common law. The prosecutor was not allowed by those rules to demur to the return if he conceived it to be insufficient in law, or traverse the allegations contained in it if he knew them to be false; nor was he permitted to plead to the return in any form whatever. If he wished to test the validity or

sufficiency of the return in point of law, he could do so only by an application to the court that it be quashed, or, by objecting to it on the ground of its insufficiency and moving for a concilium, have the questions argued and determined. In either form of proceeding, if it appeared to the court that the return was insufficient in law, a peremptory mandamus was awarded; but if sufficient in law though false in fact, the proceedings by mandamus were suspended, and the prosecutor had no other recourse but to bring an action on the case against the defendant for a false return, though if he succeeded in that action a peremptory mandamus went as in cases where the return was held to be insufficient. *The King* v. *The Mayor and Aldermen of London,* 3 Barn. & Ad., 255. The award in every such case, being made upon motion and not upon issue joined, either of law or of fact, was considered by the courts to be a rule merely and not a formal judgment. And upon that ground, mainly, it was held in the cases cited that a writ of error would not lie.

These rules of proceeding were essentially modified in England in 1711 by the statute known as the statute of Anne. The effect of that statute was to assimilate the proceedings in cases by mandamus to ordinary actions at law, the prosecutor setting forth his right or cause of action in certain formal modes, to which the defendant set up his defence by way of return, the prosecutor being then at liberty to plead to or traverse the return. 3 Bla. Comm., 265. Such further proceedings were then authorized as might have been had at common law if the prosecutor or relator had brought his action on the case for a false return. But the statute did not abrogate the common law rules of proceeding, or, according to the interpretation it received from the English courts, authorize the prosecutor or relator to test the validity of the return by way of demurrer. *The King* v. *The Mayor and Aldermen of London,* supra; High on Extra. Rem., §§ 490, 491. If, however, the prosecutor or relator pleaded to or traversed the return, and, upon issue joined, judgment was rendered in his favor, the defendant was entitled to a writ of error to review the judgment. *The King* v. *Dean and Chapter of Trinity Chapel in Dublin,* supra.

This summary method of testing the validity or sufficiency of a return to an alternative mandamus provided by the common law never received the sanction of the courts or was otherwise incorporated into the jurisprudence of this state. The first proceeding of which our reports furnish any account was had before the Superior Court sitting at Litchfield in 1788. An alternative mandamus had been issued to the town clerk of the town of Litchfield to record a deed which he had refused to record, and he had made his return to the writ. The court was thereupon requested to direct what should be the rule of proceeding in trying the sufficiency of the return—whether the rule provided by the common law as it stood before the statute of Anne, or that statute. And the court determined that the statute should be the rule of proceeding. *Strong's case*, Kirby, 345. No record of this case was made by the clerk of the court in which it was commenced, (the contest having been settled without the trial of the return, 1 Sw. System, 99,) and the original papers have been taken from the files of the court and cannot be found. But it is apparent from the report of the case that the court was of opinion that the proper mode of testing the sufficiency of the return under the provisions of the statute of Anne, was, not by a motion to quash or a motion for a concilium, but by a substantial demurrer. A similar opinion was expressed by the Supreme Court of the state of New York in the case of *The People* v. *Champion et al.*, 16 Johns., 61. That was a proceeding by mandamus to compel certain commissioners to lay out and establish a highway. The commissioners made a return to the alternative writ and there was a demurrer to the return. The statute under which the proceeding was instituted was, in respect to the form of the pleadings, like the statute of Anne. Counsel for the defendants objected that it was irregular for the relator to demur to the return. But the court directed the demurrer to be argued, and after argument held that the statute authorized the party prosecuting to demur to the return. Spencer, J., in giving the opinion of the court, said: " We ought to encourage and promote this method of testing the validity of a return, for

if either party is dissatisfied with the judgment of the court he has his remedy on the record by a writ of error."

The rule of proceeding adopted in *Strong's case* continued to be the rule in like cases until 1821, when the present statute, except so much of it as gives jurisdiction in mandamus cases to the Courts of Common Pleas and the District Court, was enacted. Since that time the statute has furnished the rule of proceeding; and while it directs the courts' upon which it confers jurisdiction to issue writs of mandamus, to proceed therein and render judgment according to the course of the common law, it has been uniformly and I think properly construed to authorize the prosecutor or relator to test the validity or sufficiency of a return by way of demurrer; and the practice, so far as I have been able to obtain information respecting it, has been in harmony with that construction. The court below, therefore, properly declined to entertain the motion of the State's Attorney to quash the return to the alternative writ or for a concilium, and directed him to answer further; and the Attorney having, in compliance with that direction, made further answer in the form of a substantial demurrer to the return, the peremptory mandamus was awarded by a formal judgment upon the demurrer. On such a judgment, the authorities all agree that a writ of error will lie.

But it is insisted by the defendant in error that the granting or refusing of a writ of mandamus is a matter resting in the sound discretion of the court, and that the exercise of that discretion is not the subject of review on a writ of error. It is undoubtedly a correct general proposition that the exercise of the jurisdiction to grant writs of mandamus rests to a considerable extent in the sound discretion of the court; and that where in the exercise of such a discretion the writ is refused, the judgment of refusal will not be reviewed on error. But I am not prepared to hold that where the writ is granted in a case in which the court might in its discretion have refused it, a revision of the legal question will be precluded. 1 Redf. on Railw., note 1, page 660. However this may be, no doubt can exist that in a case like the one in the

court below, where the writ is applied for to enforce an act of the legislature for the public benefit and there is no other adequate remedy for its enforcement, the state or its attorney is entitled to the writ as of right, and there is no discretion in the court to refuse it. Tapping on Mandamus, 54, 56, 288; 2 Dil. on Mun. Corp., § 695.

Another point made by the defendant in error is, that the judgment below was, practically and for the purposes of the law, a judgment of this court and not a judgment of the Superior Court, within the meaning of the statute allowing writs of error. The decisions in the cases of *Smith* v. *Lewis*, 26 Conn., 119, *Nichols* v. *City of Bridgeport*, 27 id., 459, and *Fowler* v. *Bishop*, 32 id., 199, have established the rule that where a case has been reserved for the advice of this court, and the advice has been given, and judgment has been rendered in accordance with such advice by the court making the reservation, this court will not afterwards, upon proceedings in error, consider questions on which the party moving in error was fully heard or had an opportunity to be heard when the case was before this court upon the reservation. "It is quite obvious," says STORRS, C. J., in giving the reasons for the decision in *Nichols* v. *City of Bridgeport*, " that the allowance of a practice by which questions decided by us on a reservation of them for our opinion, might be afterwards raised again on a writ of error brought before us, would do away with the great advantages of such reservations, and render them not merely useless but very burdensome, as to both the increased expense and delay of the litigation. And there is not only no occasion for reviewing the questions decided by us on such reservations, since those questions, when so reserved, although brought before us informally, are considered and examined as deliberately and carefully as if they were presented by writ of error, but the allowance of such review would give the complaining party the benefit of a re-argument, to which he ought not to be entitled unless for special cause apparent to the court, and which it is in his power to obtain by a regular application for that purpose, if sufficient reasons for it be shown."

In practice this rule does no injustice to the parties interested, as it places them in no worse situation than they would have been if the judgment had been rendered originally by the lower court and afterwards affirmed on error by this court.   For where, in a case reserved, the validity of a treaty or statute of the United States is drawn in question and the judgment is against its validity, or where there is drawn in question the validity of a statute of this state on the ground of its being repugnant to the constitution, treaties or laws of the United States and the judgment is in favor of its validity, or where some title, right, privilege or immunity is claimed under the constitution or some treaty or statute of the United States and the judgment is against the title, right, privilege or immunity set up or claimed, the unsuccessful party is never refused the privilege of bringing a writ of error to this court and having the judgment, without re-argument or further hearing, affirmed.   He may then, if he chooses, remove the record to the Supreme Court of the United States and have the judgment re-examined by that tribunal.   U. S. Statutes at Large, 132, § 709.

As the statute upon which the proceedings in the court below were founded, was drawn in question on the ground of its being in violation of the constitution of the United States, and the judgment was in favor of its validity, jurisdiction of the present case is entertained by this court for the purpose of affirming the judgment, according to the usage and practice in similar cases.

. Upon these grounds the motion of the defendant in error to strike the case from the docket is denied, and the judgment of the Superior Court is affirmed.

In this opinion the other judges concurred.